THE OAK

THE DAUNTLESS.

(Circuit Court of Appeals, Fourth Circuit. April 10, 1907.)

No. 719.

**1. TOWAGE—CARE REQUIRED OF TUG.**
> A towing tug is not an insurer of its tow, and is bound only to the exercise of a reasonable degree of care and skill in the work undertaken.
> [Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Towage, § 11.]

**2. SAME—SINKING OF TOW—UNSEAWORTHINESS.**
> A finding affirmed that the sinking of a barge, which was first in a tow of five, on a voyage from Baltimore to Norfolk, while passing into Hampton Roads through the Swash Channel, was not due to her grounding or to any fault of the tug, but to her unseaworthiness and inability to stand the strain as leading tow, where she was placed at the request of her master; it being shown that the master of the tug was a competent and careful navigator, that he took the usual channel, and that the tug and other tows which were of equal or greater draft passed safely.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk.

In Admiralty.

For opinion below, see 148 Fed. 1005.

This libel, in admiralty, was instituted to recover for the loss of the barge Oak, and her cargo of fertilizer, alleged to have been caused by the negligent and unskillful navigation of the steam tug Dauntless, which had undertaken to tow the barge from Baltimore to Norfolk. The barge sank about 10 o'clock in the morning in the Swash Channel of the Thimble Shoal, about one mile west of the Thimble Light, near the entrance to Hampton Roads. The steam tug was in charge of a very experienced master of high reputation for competency and had a full complement of officers and crew, and with five loaded barges in tow left Baltimore bound for Norfolk on March 14, 1905. The tow con-

sisted of five barges; the first one being the Oak, which sank, and with her cargo was a total loss. She was next to the tug on a hawser about 600 feet long, and the other four barges were on cables of about 450 feet in length, so that including the length of the hawsers and the boats it was about one-half a mile from the stern of the tug to the stern of the last barge. The tug was one of the most capable in use for towing on the Chesapeake Bay, and had frequently proved herself able to manage similar and even heavier and longer tows. The Oak was placed next to the tug at the head of the tow by the express desire of her captain, who insisted on having that place. On account of snow, they put in to Annapolis the first night and anchored, and when the weather was favorable they proceeded until they arrived off the Patuxent river, when, the weather being threatening, they again made harbor until the morning. They then proceeded until the morning of the 19th, and on that morning about 7 o'clock they were abreast of Back river, and, as the master testifies (and in this he is corroborated by disinterested witnesses) from 2½ to 3 miles distant from Back River Light. There was then a good breeze from east southeast, but not sufficient to excute apprehension, and no indication of a storm. The wind, however, did increase as they proceeded until it blew 20 miles an hour, and later it increased to 25 or 30 miles. From the point abreast of Back river, the master of the tug testifies that he steered by landmarks which were visible, and with which he was very familiar, and by which, through many years of experience in navigating tugs and tows of a similar draft of water, he had found had always brought him safely through the Swash Channel of the Thimble Shoal, which channel is at least 1,000 feet wide with 13 feet depth at mean low tide. He testified that, as he proceeded southwardly from Back river on account of the southeast wind meeting the ebb tide, the water grew rougher, but not sufficiently so to suggest that the barges were in any danger, and that, even if it had occurred to him that it was expedient to seek a harbor, there was none nearer or more accessible than Hampton Roads, for which he was then making a direct course.

The master of the tug testified there was no indication that the barge Oak was in distress until about 20 minutes before she sank, when the lookout who was watching the barges reported that the barge Oak was making a signal, and looking back the master saw the Oak's stern was under water, and her bow afloat, and that she had grounded. He stopped the tug, and the other barges ran up alongside of him and anchored. The master testifies that he sounded the depth of water when the tug stopped and found 18 feet depth, and sounded where the barge was sunk and found 14 feet.

The tug drew 11½ feet and the barge Oak drew from 9 to 10 feet forward and 11 feet aft, and none of the other four barges drew less than 11 feet, and some a few inches more. The master of the tug testified that the tow made no leeway, for the reason that the ebb tide tended to carry them to the eastward, while the wind tended to drive them westward, and that the tide was the stronger influence, as the barges were deeply ladened in the water and presented very little freeboard surface to the wind. It was fully proven that the barges followed directly after the tug. The depth of water at the time of the sinking of the barge was greater than shown on the chart, which is calculated for mean low tide, because it was then the early ebb, and the water was kept back from running out by the strong wind from the sea.

It was charged as a fault against the tug that she took a course through the Swash Channel, when she should have gone in the deeper water on the seaward side of the Thimble Shoal; but the master testified, and was corroborated by several witnesses, that the Swash Channel was a safe channel, customarily used by all similar tows, and that by going outside by a longer route and through rougher water he would have imposed upon the tow increased risk for no sufficient reason.

The barge Oak was about 13 years old. She had been purchased as an old boat by Seward, the master, about five months before, and he was her sole owner, she was placed at the head of the tow next the tug by the express desire of the master, who wished to avoid the labor of handling the hawser, which as to the first barge devolved upon the crew of the tug, but on the other barges falls upon the crews of the barges. Her position as head barge brought upon her the strain of hauling the four following barges, and has

some tendency, it was testified, to open the seams of an old boat. The testimony of several of the captains of the other boats in the tow was that the tow was proceeding in the course usually taken, and that they did not touch the bottom anywhere, and that they did not see anything to indicate that the Oak struck the bottom off Back river. There was a great deal of testimony that at the place where the barge Oak was found after she sank there was 14 feet of water. The testimony of the captain and mate of the Oak was that she first struck the ground while passing Back River Shoal, and then began leaking, and that when she reached the Swash Channel of the Thimble Shoal, a distance of two miles, requiring nearly an hour in time, her stern was well down in the water. It was not testified by any one on the tug or on the other barges that any signal on the Oak was seen until 10 or 15 or 20 minutes before she sank.

The faults alleged against the tug are: (1) That she took a course so near to Back River Light as to permit the barge to strike on the Back River Shoal and start her leaking; (2) that the tug did not regard her signal of distress; (3) that the tug did not go to the east of Thimble Light and into deeper water; or (4) return and anchor at the mouth of either Back river or York river.

The district judge held that the tug had not been shown to be in fault, and dismissed the libel. The libelant has appealed.

Edward R. Baird, Jr., for appellant.

John W. Oast, Jr., and Floyd Hughes, for appellee.

Before PRITCHARD, Circuit Judge, and MORRIS and DAYTON, District Judges.

MORRIS, District Judge. (after stating the facts). There were some 20 witnesses examined in open court and seen and heard by the district judge. It is a case, therefore, in which the findings of fact come to us with that strong presumption of correctness which attaches in admiralty to the findings of a judge who has seen and heard the principal witnesses. The findings of the District Court were that the allegation that the barge Oak first grounded on the Back River Shoal was not sustained; that the course taken by the tug was, under the existing condictions, the proper and customary one; that the master of the tug was an exceptionally prudent and experienced navigator; that the Swash Channel across the Thimble Shoal was over 300 yards wide, with sufficient depth of water for the barge Oak, and she sank in the channel; that, the accident resulted from the unseaworthiness of the barge and not from any fault on the part of the tug.

It seems to us that, independently of the presumption of correctness in favor of the findings of the District Court, the great preponderance of evidence in the record sustains them. There is, in addition, the significant fact, not in any way explained, that although the barge Oak was the leading barge, and next to the tug which drew 11½ feet, and that she was followed by four other barges, all drawing as much and some a few inches more than she, no one of the barges encountered trouble or suffered damage, except the Oak. The competency, skill, and prudence of the master of the tug being established, the sufficiency of the power of the tug being undisputed, the general safety and constant use of the route under similar weather and other like conditions being proved, it appears to us that even if the very improbable, if not impossible, theory, be adopted that in some way the head barge did strike on an unknown lump which the tug and the

other four following barges passed over without striking, still the tug would not be responsible. The tug is not an insurer, and there is not even required of her the highest possible degree of skill and care, but only the exercise of reasonable skill and care in accomplishing the work undertaken by her. The Margaret v. Bliss, 94 U. S. 494–496, 24 L. Ed. 146. In the recent case of Pederson v. John D. Spreckles, 87 Fed. 938–944, 31 C. C. A. 308, the leading cases applying this rule are collated, and it is not necessary to cite them here.

We think the decree was right, and it is affirmed.

Affirmed